# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### PORTLAND DIVISION

| | | |
|---|---|---|
| JAMES A. ROSS, an individual, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. CV-09-1530-HU |
| MARK NOOTH, Superintendent; SRCI; LT. HORTON; SGT. BENNET SGT. SMITH; DR. GULLICK; C/O J. SHEPARD; HONSELY, hearings officer; GILLUM, Housing Assignments Officer, and additional defendants listed under Section III of the Complaint, | ) ) ) ) ) ) ) ) ) ) | FINDINGS & RECOMMENDATION |
| Defendants. | ) ) | |

James Arthur Ross
12599830
EOCI
2500 Westgate
Pendleton, OR 97801
    Pro Se Plaintiff

E. Aaron Sprague
Oregon Department of Justice
Trial Division
1162 Court Street NE
Salem, OR 97301
    Attorney for Defendants

1  HUBEL, Magistrate Judge:

2   Plaintiff James Arthur Ross, an inmate at Eastern Oregon
3  Correctional Institution ("EOCI"), brings four constitutional
4  claims under 42 U.S.C. § 1983 against prison officials Dr. Gullick,
5  Sgt. Smith[1], Gillum, Honsely, Lt. Horton, Sgt. Bennet, and John Doe
6  Physical Plant Supervisor.  Before the court is the defendants'
7  motion to dismiss Ross' first and fourth claims.[2]  For the reasons
8  set forth below, I recommend granting the motion.

**FACTS**

10  Ross, who is currently incarcerated at EOCI, was formerly
11 housed at the Snake River Correctional Institution ("SRCI"), where
12 the events pertinent to this motion took place.  When Ross filed
13 his Complaint on December 31, 2009, he alleged many different
14 causes of action.  This court dismissed some of Ross's claims in an
15 Order dated February 10, 2010 [doc. #5].  Following the filing of
16 Ross's Amended Complaint, this court narrowed the existing claims
17 further in its order dated April 23, 2010 [doc. #8].  At present,
18 Ross has four claims pending against the defendants.  Claim one
19 alleges that Dr. Gullick denied Ross constitutionally adequate
20 medical treatment.  Claim two is a First Amendment retaliation
21 claim against Smith, Gillum, Horton, Bennet, and John Doe Physical
22 Plant Supervisor. Claim three is an Eighth Amendment claim against
23 defendants Smith, Horton, Bennet, and Shepard.  It alleges Ross's
24 constitutional rights were violated by the defendants when they

---

[1] Neither the complaint nor the motions detail the first names of the defendants.

[2] Defendants specify in the Reply, at 2, that the motion is directed only at the first and fourth claims.

2 - FINDINGS AND RECOMMENDATION

forced him to choose between being in a cell with a violent inmate or going to disciplinary segregation. Claim four is an equal protection claim against Dr. Gullick. It alleges that Dr. Gullick violated Ross's constitutional rights because he did not provide pain killers as strong as the medications he provided to other inmates. The facts set forth below pertain only to the first and fourth claims.

Ross has back pain stemming from an on the job injury when he worked for U-Haul prior to his incarceration on September 2, 2004. According to Ross, following his injury he was advised he should have surgery after it was approved by insurance, and given a "prescription of Vicodin 5.5 to take two tablets up to three times a day as needed for the pain." Compl. at 9. Before he could have the operation, however, he was convicted of attempted aggravated murder, kidnapping, rape, and sodomy, and sentenced to 40 years in prison. He alleges that since his arrival at SCRI, he "has struggled with the medical staff . . . and more specifically Dr. Gullick, for continued and satisfactory medical treatment for [his] serious back injury." Compl. at 10.

Shortly before May 3, 2008, Ross allegedly injured his ankle while playing soccer at SCRI. He initially limped back to his cell, for fear that he would be sent to the infirmary and lose his spot in privileged housing. On May 3, 2008, he went to see medical personnel, however, and Nurse Bonner allegedly refused to provide medical treatment. Ross filed a grievance and obtained medical treatment for his ankle four days later. He was subsequently sent to see Dr. Gullick about his ankle, and took the opportunity to confront him about his back problems. Dr. Gullick scheduled Ross

3 - FINDINGS AND RECOMMENDATION

for an appointment to see Nurse Dean who would do research about the validity of Ross's back injury, including trying to find insurance records of the injury. In the mean time, Dr. Gullick provided Ross with a medication for pain that Ross believed was called "Feldine," which he found insufficient. Dr. Gullick scheduled Ross for a second appointment and gave him another medication, "Normatripylnee,"[3] which Ross complained made him feel "really weird, uncomfortable, and sick." Compl. at 12. Ross alleges he found out later that the medication was actually an anti-depressant. He was already taking another unspecified anti-depressant, and stopped taking the Nortriptyline.

On August 26, 2008, Ross sent Dr. Gullick a kyte requesting an appointment to discuss the medication and his ankle, which was not healing to his satisfaction. Dr. Gullick scheduled an appointment for August 28, 2008, and informed Ross that ankle injuries take time to heal, and allegedly said that he might need an MRI at some point. Ross allegedly asked Dr. Gullick about the anti-depressant he prescribed for Ross's ankle pain, and Dr. Gullick allegedly responded that "they are now using those meds to treat people like [Ross]." Compl. at 13. According to Ross, a confrontation ensued where Dr. Gullick told Ross he was unable to find any evidence of his back injury, and that given his posture and gait, he believed that Ross simply wanted to abuse narcotic pain medication.

Ross began two separate grievance processes in connection with the events detailed herein. First, he filed Grievance No. 2008.05.003 ("May 3 grievance") between May 3 and May 6, 2008,

---

[3] "Nortriptyline" is the proper name of an anti-depressant.

4 - FINDINGS AND RECOMMENDATION

alleging mistreatment during a medical visit on May 3, 2008 to address the ankle injury he experienced during a soccer game. Decl. Teresa Hicks ¶ 11. The May 3 grievance was forwarded to Shirley Hodge RN, who responded on June 5, 2008. Hicks Decl. ¶ 12. Ross did not file a grievance appeal to Hodge's response. Hicks Decl. ¶ 13. Ross explained, "In my opinion, at the time of the response, I had nothing to appeal or continue to complain about." Pl.'s Mot. Obj. Def.'s Mot. Dismiss at 2.

Between August 28, 2008, and September 2, 2008, Ross filed Grievance No. 2008.09.008 ("August 28 grievance") complaining of mistreatment by Dr. Gullick related to his ankle and back injuries. Hicks Decl. ¶ 14. On October 24, 2008, Shirley Hodge responded to the August 28 grievance,

> I have reviewed your grievance and medical record regarding your concerns. I am sorry if you felt like your provider did not listen to your concerns. I have requested a chart review with Dr. Gullick and the TLC committee. I will request a plan of care that addresses your concerns. If your symptoms become worse at any time, please request sick call. If you have any further questions, please let me know.

Hicks Decl. ¶ 15. On November 7, 2008, Ross filed a grievance appeal related to the August 28 grievance. Hicks Decl. ¶ 16. On January 6, 2009, Dr. Steve Shelton responded to the appeal,

> In the original grievance response sent by Medical Services Manager Hodge she indicated she was going to request a chart review with Dr. Gullick and the Therapeutic Level of Care (TLC) Committee. I have been informed that on October 29, 2008, your chart was referred to TLC for a plan of care review and at that time a second opinion was authorized. I also have been informed you have been scheduled with Dr. Elliott-Blakeslee for a second opinion. Please watch the call out for your pending appointment. In the interim, if you do not believe that your medical needs are being met or that your condition has changed, please send an Inmate Communication to SRCI Health Services so that you may be scheduled for Sick Call and/or a provider appointment.

5 - FINDINGS AND RECOMMENDATION

Thank you.

Hicks Decl. ¶ 17. According to Ross, he attempted to file a second grievance appeal, but it was denied because it related to a disciplinary report. The evidence of record, however, shows that instead of filing a second grievance appeal to the August 28 grievance, he filed a new third grievance on November 19, 2008, Grievance No. 2008.12.049, related primarily to his removal from privileged housing. Supp. Decl. Teresa Hicks Ex. 2, at 2. This final grievance was returned without action because "Misconduct Reports are not eligible for the grievance process." Id. at 1.

**STANDARD**

A motion to dismiss based on a prisoner's failure to exhaust administrative remedies is properly brought as an unenumerated Rule 12(b) motion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). "In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20. Nonexhaustion is an affirmative defense which must be raised and proved by the defendants. Id. at 1119. If the court concludes administrative remedies have not been exhausted, the unexhausted claim should be dismissed without prejudice. Id. at 1120.

**DISCUSSION**

Defendants move to dismiss Ross's first and fourth claims on the ground that he did not exhaust his administrative remedies.

The Prison Litigation Reform Act ("PLRA") of 1995 amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under Section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until

6 - FINDINGS AND RECOMMENDATION

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A prisoner does not satisfy the PLRA's exhaustion requirement by merely demonstrating that administrative remedies are no longer available. Woodford v. Ngo, 548 U.S. 81, 87 (2006). Instead, he must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Id. The exhaustion requirement is mandatory, even when the prisoner seeks relief not available in grievance proceedings. Porter v. Nussle, 534 U.S. 516, 524 (2002).

The Oregon Department of Corrections ("ODOC") has established an administrative review procedure whereby inmates are encouraged to first attempt to resolve disputes with staff through face-to-face verbal communication or in writing. OAR 291-109-0120. If face-to-face or written communication does not resolve the dispute, inmates may file a formal written grievance. OAR 291-109-0140(1)(a). The grievance will be forwarded to the appropriate staff person for a response. If the inmate is not satisfied with the response he receives, he may appeal by filing a grievance appeal form within 14 days. OAR 291-109-170(1)(a). The appeal is then forwarded to the functional unit manager for review and response. If the inmate is not satisfied with the functional unit manager's decision, he may appeal that decision within 14 days by sending a grievance appeal to the assistant director. OAR 291-109-0170(2)(a). The assistant director's decision is final and is not subject to further review. OAR 291-109-0170(2)(d). When a prisoner pursues a remedy to that point he or she has exhausted his or her administrative remedies.

7 - FINDINGS AND RECOMMENDATION

Here, Ross filed two grievances in connection with his first and fourth claims. After filing the May 3 grievance, and receiving a response, Ross did not appeal. In order to exhaust his adminstrative remedies, under OAR 291-109-170(1)(a) and OAR 291-109-170(2)(a), appeals were required and available.

After filing the August 28 grievance, Shirley Hodge responded to Ross. Ross appealed Hodge's response to Dr. Steve Shelton, who responded on January 6, 2009. Hicks Decl. Ex. 3 at 21. Ross did not appeal further. Under OAR 291-109-0170(2)(a), a further appeal was required and available to Ross.

For the above reasons I find that Ross failed to exhaust his administrative remedies with respect to his first and fourth claims. Accordingly, I recommend that Ross's first and fourth claims be dismissed without prejudice.

## CONCLUSION

Defendants' Motion to Dismiss [Doc. #22] should be granted, and plaintiff's claims dismissed without prejudice.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due April 12, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due April 29, 2011. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

///

///

///

8 - FINDINGS AND RECOMMENDATION

IT IS SO ORDERED.

Dated this 25 day of March, 2011.

/s/ Dennis J. Hubel

Dennis James Hubel
United States Magistrate Judge

9 - FINDINGS AND RECOMMENDATION