UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JAMES ARTHUR ROSS, | No. 3:09-cv-01530-HU |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| MARK NOOTH et al., | |
| Defendants. | |

James A. Ross
SID No. 12599830
Eastern Oregon Correctional Institution
2500 Westgate
Pendleton, OR 97801

    Pro Se Plaintiff

John Kroger
Attorney General
Michael R. Washington
Email: Michael.R.Washington@doj.state.or.us
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Facsimile: (503) 947-4791

    Of Attorneys for Defendants

Page 1 - FINDINGS AND RECOMMENDATION

HUBEL, Magistrate Judge:

Following inmate James Arthur Ross' ("Ross") removal from the honor housing unit at Snake River Correctional Institution ("SRCI"), Ross brought this 42 U.S.C. § 1983 action for damages against defendants individually and in their official capacities as employees of the Oregon Department of Corrections ("ODOC"). Defendants Glenda Smith ("Smith"), John Gillum ("Gillum"), Frank Horton ("Horton"), Joel Bennett ("Bennett"), and John Shepard ("Shepard") (collectively, "Defendants") now move for summary judgment on Ross' remaining First and Eighth Amendment claims.[1] For the reasons set forth below, Defendants' motion (Docket No. 90) for summary judgment should be GRANTED.

**Facts**

Ross was incarcerated on September 2, 2004, after being convicted of attempted aggravated murder, kidnaping, rape, and sodomy. Since his incarceration, Ross claims to have drawn the ire of fellow prisoners who have knowledge of the crimes he committed. Ross has also had a series of run-ins with ODOC medical staff regarding treatment of back and ankle injuries. Ross' back pain stems from an on-the-job injury that predates his incarceration and Ross' ankle injury occurred while playing soccer at SCRI. Because Ross believed he received less than satisfactory treatment for his

---

[1] Claims two and three of Ross' amended complaint are the only outstanding causes of action in this litigation. Claim two is a First Amendment retaliation claim based on Ross allegedly being transferred from SCRI's honor housing unit after filing several medical grievances against ODOC medical staff. Claim three is an Eighth Amendment claim based on Ross allegedly being forced to choose between staying in a cell with a violent inmate or going to disciplinary segregation.

Page 2 - FINDINGS AND RECOMMENDATION

injuries, he filed grievances against medical staff in May and late August of 2008. Although Ross failed to exhaust his administrative remedies with respect to these grievances, which ultimately led to the dismissal of claims one and four in this proceeding, Ross asserts that the filing of grievances against medical staff precipitated retaliatory conduct by Defendants in late October 2008.

On October 25, 2008, Ross sent an inmate communication form to medical staff at SCRI complaining of dizziness and lightheadedness. Ross reported "smelling fumes through the ventilation" for the past few days, which he described as feeling "like [he] had [his] face in a tailpipe while the car was running for several hours." (Purcell Decl. at 3.) Ross asked whether there was "a way to test the air [in his cell] for these fumes" or to "test [him] for excessive exposure[.]"[2] (Purcell Decl. at 3.) In response to Ross' complaints, ODOC staff scheduled Ross an appointment with a physician on October 29, 2008, but Ross was a "no show for [his] sick call." (Purcell Decl. at 4.)[3]

The next day, Ross was moved from the honor housing unit to Complex 3, the general population housing unit at SCRI. (Herrera Decl. ¶ 5; Montgomery Decl. at 4.) Inmates assigned to honor

---

[2] The parties refer to Ross' honor housing unit at SCRI as Complex 1.

[3] Ross claims that he canceled the sick call, but this record does not appear to support Ross' contention. (Purcell Decl. at 4.) In fact, Ross says he "had no reason to go to [the] sick call" because the smell of fumes went away. (Pl.'s Opp'n at 3.) Yet, an exhibit provided by Ross from the ODOC indicates that an inmate needs to "come to the sick call to cancel." (Pl's Opp'n, Ex. 1 at 1.)

Page 3 - FINDINGS AND RECOMMENDATION

housing "are allowed additional privileges over those housed in general population," but "[n]ot all inmates who qualify for honor housing are assigned to the unit due to limited bed space." (Herrera Decl. ¶ 4.) According to the Correctional Captain at SCRI, Jaime Herrera ("Herrera"), it was reasonable to move Ross from honor housing until his complaints about the heating, ventilation, and air conditioning ("HVAC") system could be investigated. (Herrera Decl. ¶ 6; Montgomery Decl. at 4.) Indeed, as the Assistant Superintendent of General Services at SCRI explained, the honor housing unit has its own HVAC system, which means that "[i]f the HVAC system in the [h]onored [h]ousing complex had been malfunctioning as alleged by [i]nmate Ross, all cells within the [h]onored [h]ousing complex would be affected by the change in air quality." (Miller Decl. ¶ 4.)

That same day, Ross received a misconduct report for disobedience of an order. (Herrera Decl. ¶ 6.) Ross, who had spent only 3.5 hours in his new unit, refused to report back to the Complex 3 from "chow hall" because he wanted to be placed in unit "3J" instead, according to Lieutenant Horton. (Montgomery Decl. at 4.)[4] Ross also told Sergeant Bennett "he was going to be assaulted if he went back" to Complex 3, even though Ross conceded that nobody had explicitly threatened him. (Montgomery Decl. at 4.) After failing to comply with the officers' orders to return to his cell, Ross was temporarily placed in the Disciplinary Segregation

---

[4] Ross admits that unit 3J is not the equivalent of Complex 1, but nevertheless argues that it is a privileged housing unit that provides inmates with certain advantages and comforts over the unit he was moved to in Complex 3. (Pl.'s Opp'n at 5.)

Page 4 - FINDINGS AND RECOMMENDATION

Unit ("DSU") pending a disciplinary hearing on the misconduct report. (Herrera Decl. ¶ 6.)

Two weeks later, on November 13, 2008, Ross was moved from the DSU to Complex 2 in accordance Ross' desire to avoid a physical confrontation with his cellmate from Complex 3. (Pl.'s Opp'n at 13; Gillum Decl. Ex. 1 at 4.) With the exception of a few brief stints in the DSU, it appears that Ross remained in Complex 2 until he was transferred to Eastern Oregon Correctional Institute ("EOCI") in June 2009. (Gillum Decl. Ex. 1 at 5.) This suit followed on December 31, 2009.

## Legal Standard

Summary judgment is appropriate "if pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is not proper if factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to

Page 5 - FINDINGS AND RECOMMENDATION

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovick v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). The "mere existence of a scintilla of evidence in support of plaintiff's positions [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

**Preliminary Procedural Matter**

In his amended complaint, Ross has pled a First Amendment retaliation claim against John Doe Physical Plant Supervisor. This is Ross' only outstanding claim brought against a Doe defendant. (*See* Docket Nos. 8, 41 and 56.) Defendants assert that such a claim should be dismissed as a matter of law because the Doe defendant has not been identified or served, and Defendants did not

Page 6 – FINDINGS AND RECOMMENDATION

file a waiver of service for this individual. Ross did not address this contention in his handwritten opposition.

Pursuant to Rule 4(m), service of the summons and complaint must be made upon a defendant within 120 days after the filing of the complaint. FED. R. CIV. P. 4(m). "The 120-day period for service of the summons and complaint applies to Doe defendants." *Morris v. Barra*, No. 10-2642, 2012 WL 1059908, at *2 (S.D. Cal. Mar. 28, 2012). District courts may dismiss an action against a Doe defendant that is "not identified and served within 120 days after the case is filed pursuant to [Rule] 4(m)." *Sedaghatpour v. California*, No. 07-01802, 2007 WL 2947422, at *2 (N.D. Cal. Oct. 9, 2007); *see also Scott v. Hern*, 216 F.3d 897, 911-912 (10th Cir. 2000) (dismissing action against doe defendants for failure to effect timely service under Rule 4(m)); *Aviles v. Village of Bedford Park*, 160 F.R.D. 565, 567 (N.D. Ill. 1995) ("authorities clearly support the proposition that John Doe defendants must be identified and served within 120 days of the commencement of the action against them"). However, plaintiffs "should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citation omitted; brackets deleted).

In this case, Ross had an opportunity through discovery to identify the John Doe Physical Plant Supervisor, but failed to do so. As a result, it does not appear that the U.S. Marshal was provided the necessary information to serve the summons and complaint. *See generally Puett v. Blandford*, 912 F.2d 270, 275

Page 7 - FINDINGS AND RECOMMENDATION

(9th Cir. 1990) (holding "that an incarcerated pro se plaintiff proceeding in forma pauperis is entitled to rely on the U.S. Marshal for service of the summons and complaint . . . .") *abrogated on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). Courts in this circuit have dismissed claims against Doe defendants under similar circumstances. *See, e.g., Chadwick v. San Diego Police Dep't*, No. 09-CV-946, 2010 WL 883839, at *7 (S.D. Cal. Mar. 8, 2010) (dismissing claim against Doe defendant where incarcerated pro se plaintiff "had ample opportunity to investigate and identify Officer Doe, but ha[d] failed to date to do so.")

Moreover, identifying the John Doe Physical Plant Supervisor would likely be futile because, as discussed below, the record suggests that Ross' transfer was based on his complaints about the honor housing unit's HVAC system, not Ross' complaints against medical staff for insufficient treatment of his back and ankle injuries. (*See* Montgomery Decl. at 4) ("This inmate was removed from honor housing due to several complaints regarding the HVAC system and that it was affecting his sinuses.") Indeed, Ross acknowledges that Sergeant Smith moved him, (Pl.'s Opp'n at 8), yet Smith says she has "ha[s] no knowledge of any grievance Inmate Ross filed against Health Services staff." (Smith Decl. ¶ 5.)

If the sergeant who moved Ross had no knowledge of the medical treatment complaints Ross had lodged, there is nothing to suggest that someone as far removed from day-to-day contact with an inmate, the medical staff, and the grievance procedure staff as the Physical Plant Supervisor would have any knowledge of the Ross' complaints about his medical treatment. Nor is there anything to suggest that the Physical Plant Supervisor could possibly have

Page 8 - FINDINGS AND RECOMMENDATION

anything to do with decisions about an inmate being moved from one cell location to another within the prison. Most importantly, there is no evidence in this record of any such connection the supervisor might have had with Ross, nor of any knowledge that could be attributed to him of Ross' medical complaints. Ross has not sought discovery on any such issues and makes no argument why he should be allowed further time to identify the Plant Supervisor and discover any such evidence to avoid dismissal of the Doe defendant.

In short, the court recommends dismissing Ross' First Amendment Retaliation claim against John Doe Physical Plant Supervisor. Ross may file objections to this Findings and Recommendation, and in his objections he may attempt to establish either good cause or grounds for a discretionary extension of time to identify and serve the John Doe Physical Plant Supervisor and respond to the motion for summary judgment.

## Discussion

**I.   First Amendment Retaliation Claim**

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). Among the rights prisoners retain is "a First Amendment right to file prison grievances." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). Retaliation against a prisoner for exercising this right "is itself a constitutional violation, and prohibited as a matter of clearly established law." *Id.* (internal quotation marks omitted); *Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir. 2003) (recognizing that the

Page 9 - FINDINGS AND RECOMMENDATION

prohibition against retaliatory punishment is clearly established law "for qualified immunity purposes.")

There are five elements necessary to establish a viable First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Brodheim,* 584 F.3d at 1269 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).

First Amendment "[r]etaliation claims must be evaluated in light of the concerns of excessive judicial involvement in day-to-day prison management, and courts must therefore 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Gossett v. Stewart*, No. 09-2120, 2012 WL 845588, at *13 (D. Ariz. Mar. 13, 2012) (quoting *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995)).

In this case, the court recommends granting Defendants' motion for summary judgment on Ross' retaliation because Ross has failed to proffer facts from which a reasonable jury could conclude that Defendants took the allegedly retaliatory action *because of* Ross' filing of grievances against medical staff at SCRI. *See McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979) ("Plaintiff must prove that he would not have been transferred 'but for' the alleged reason."); *Wyatt v. Zanchi*, No. 1:09-cv-01242, 2011 WL 5838438, at *9 (E.D. Cal. Nov. 21, 2011) ("A plaintiff asserting a retaliation claim must demonstrate a 'but-for' causal nexus between the alleged

Page 10 - FINDINGS AND RECOMMENDATION

retaliation and plaintiff's protected activity[.]") According to the Investigative Report produced by the ODOC, Lieutenant Horton informed the DOC investigator that Ross was "removed from honor housing due to several complaints regarding the HVAC system and that it was affecting his sinuses," (Montgomery Decl. at 4), not because of the filing of grievances against medical staff. Sergeant Smith, who Ross specifically refers to as the officer that removed him from the honor housing unit, (Pl.'s Opp'n at 8), stated that she "had no knowledge of any grievance Inmate Ross filed against Health Services staff." (Smith Decl. ¶ 5.)

Ross claims that the fumes coming from the honor housing unit's HVAC system subsided prior to his sick call scheduled for October 29, 2008, which should have rendered the issue moot and eliminated the need to move him while his HVAC system complaints were investigated. As Ross explained,

> a fellow inmate who worked in the ventilation systems, James Nova, told me that [you could smell fumes] when they change the air filters, which they had. [And] it usually lasts a couple of days and then goes away. He was right! Later that day the smell went away, so, I had no reason to go to [the] sick call to pursue the issue any further. . . . [T]his should have ended the issue.

(Pl.'s Opp'n at 3.) However, there is no evidence in the record that Ross ever informed anyone at the prison, and certainly no defendant here, that the fumes --which he says were so nauseating they interfered with his ability to sleep and breathe -- were no longer an issue.[5]

---

[5] The court again reiterates that Ross was a "no show" for his sick call, despite the fact that he needed to appear to cancel and could have "receive[d] an out of area sanction" for not doing so. (Pl.'s Opp'n, Ex. 1 at 1.)

Page 11 - FINDINGS AND RECOMMENDATION

In all material respects, this case is akin to the Ninth Circuit's decision in *Pratt*. There, the plaintiff-prisoner alleged that his transfer to another prison facility and subsequent double-celling were done in retaliation for the interview he gave to Fox television, in which he repeated his longstanding claims that he was innocent and framed by the FBI. *Pratt*, 65 F.3d at 804. The plaintiff had been housed exclusively in single cells during his twenty-three years in prison and claimed that double-celling exacerbated his post-traumatic stress disorder and bowel problems. *Id.* at 804-05. The *Pratt* court conceded that "it would be illegal for DOC officials to transfer and double-cell [the plaintiff] solely in retaliation for his exercise of protected First Amendment rights," but parted company with the plaintiff and district court as to "the existence in the current record of facts to support this scenario." *Id.* at 807. In reversing the district court's grant of a preliminary injunction, *Pratt* emphasized the lack of a causal link between the alleged retaliation and the plaintiff's protected activity, stating:

> In finding that the defendants acted with a retaliatory motive, the district court relied in large part on the timing of [the plaintiff]'s interview request and the subsequent transfer. True, timing can properly be considered as circumstantial evidence of retaliatory intent. In this particular case, however, there is little else to support the inference.
>
> Most importantly, there is insufficient evidence to support the district court's finding that Gomez and other DOC officials who were involved in the transfer decision were actually aware of the Fox interview.
>
> . . .
>
> With regard to the decision to place Pratt in a double cell at Mule Creek, we find a similar lack of evidence to establish that the Mule Creek officials were aware of the Fox interview.

Page 12 - FINDINGS AND RECOMMENDATION

*Id.* at 808 (internal citation omitted). *Pratt* also noted that the plaintiff had actually "been lobbying for a transfer north for some time," despite his subsequent displeasure with being double celled. *Id.* at 809.

As in *Pratt*, Ross has presented circumstantial evidence of a retaliatory intent, such as (1) the timing of Ross' grievances against ODOC medical staff in May and late August of 2008 followed by his transfer from the honor housing unit to Complex 3 in late October 2008; and (2) the availability of single cells in units with allegedly similar accommodations to the honor housing unit. It is inescapable, however, that there is no evidence in the record to support the conclusion that any officer involved in the transfer decision was actually aware of Ross' grievances against medical staff. Rather, the evidence suggests that the officers were responding to Ross' complaints about the honor housing unit's HVAC system, which Ross claimed interfered with his ability to sleep. Thus, there is no genuine issue of material fact with respect to causation. Accordingly, Defendants' motion for summary judgment on Ross' First Amendment retaliation claim should be granted.

**II. Eighth Amendment Failure-to-Protect Claim**

The Constitution does not mandate comfortable prison, but it does not permit inhumane ones either, *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994), which is why prison officials have a duty to protect prisoners from violence at the hands of other prisoners in accordance with the Eighth Amendment prohibition of cruel and unusual punishments. *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009). As the Supreme Court explained in *Farmer*,

Page 13 - FINDINGS AND RECOMMENDATION

> gratuitously allowing the beating or rape of one prisoner by another serves no penological objective any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

*Farmer*, 511 U.S. at 833-34 (citation and internal quotation marks omitted; brackets deleted).

Under the Eighth Amendment, prison officials are only liable if they demonstrate "deliberate indifference" to "conditions posing a substantial risk of serious harm" to an inmate. *Clem*, 566 F.3d at 1181. "Deliberate indifference occurs when the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Solis v. County of Los Angeles*, 514 F.3d 946, 957 (9th Cir. 2008). "Under this standard, the prison official must not only be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, but that person must also draw the inference." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation and internal quotation marks omitted); *Wilson v. Maricopa County*, 463 F. Supp. 2d 987, 992 (D. Ariz. 2006) (explaining that the requirement is one of actual subjective intent, meaning "the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harms exists, and he must also draw the inference.") By implication, then, "[i]f a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Toguchi*, 391 F.3d at 1057 (citation omitted; brackets deleted).

The court recommends granting summary judgment on Ross' Eight Amendment failure-to-protect claim because there is no genuine

Page 14 - FINDINGS AND RECOMMENDATION

issue of fact as to whether Defendants acted with deliberate indifference. Ninth Circuit case law makes clear "that more than a mere suspicion that an attack will occur is required for an Eighth Amendment claim of failure to protect." *Willis v. Lappin*, 2012 WL 4987764, at *16 (E.D. Cal. Oct. 17, 2012) (citing *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 2000)); *Savocchio v. Crabtree*, 1999 WL 562692, at *9 (D. Or. July 12, 1999) ("Inmates have no claim under the Eight Amendment based on general unsubstantiated fear of assault by a fellow inmate or by a specific group.") The reason being, although prison official have a duty to "take reasonable measures to protect inmates from violence at the hands of other prisoners," *Robinson v. Prunty*, 249 F.3d 862, 866 (9th Cir. 2001), they must at least have an opportunity to investigate the credibility of the alleged threat. *See Leach v. Drew*, 385 Fed. Appx. 699, 701 (9th Cir. 2010) (explaining that the "failure of a prison official to respond to a known, credible threat to an inmate's safety constitute[s] a violation of the inmate's Eighth Amendment rights.")

In this case, there simply is no evidence that Defendants acted with a sufficiently culpable state of mind. It is undisputed that the 3.5 hours Ross actually spent in his cell in Complex 3 occurred without incident. As Ross explained, "I was in fact in that cell for hours before I was recognized by someone at chow [hall] and my cell[mate] was informed of my charges." (Pl.'s Opp'n at 12.) After Ross claims he was threatened by his cellmate, he approached Lieutenant Horton. According to the Investigative Report, Ross made no mention of being threatened to Lieutenant Horton and instead took issue with not being placed in unit "3J."

Page 15 - FINDINGS AND RECOMMENDATION

(Montgomery Decl. at 4.)  Lieutenant Horton told Ross he had "to wait until after chow [hall] so [he] could see why he was not placed into J." (Montgomery Decl. at 4.)[6]  Ross then proceeded to talk to Sargent Bennett, who made the following statement to the DOC investigator: "[Ross] told me he was going to be assaulted if he went back to his unit.  I asked him if anyone told him they were going to assault him and he said no, he just knew he was going to be assaulted because of his crime[s]."  (Montgomery Decl. at 4.) Soon thereafter, Ross refused to report back to Complex 3 which "created a serious security issue," thereby necessitating Ross' placement in DSU.  (Herrera Decl. ¶ 6.)

In sum, because Ross merely provides speculative and conclusory assertions regarding the risk to his safety and Defendants' knowledge and intent, the court recommends granting Defendants' motion for summary judgment on Ross' Eighth Amendment claim.  *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment")

### Conclusion

Consistent with the discussion above, Defendants' motion (Docket No. 90) for summary judgment should be GRANTED.

///

///

---

[6] In his amended complaint, Ross explains that unit 3J was viable option because he had friends in the unit "that told [him] that there was in fact empty beds [at that time]." (Am. Compl. at 19.)

Page 16 - FINDINGS AND RECOMMENDATION

**Scheduling Order**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due **April 1, 2013.** If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due **April 18, 2013.** When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 12th day of March, 2013.

/s/ Dennis J. Hubel
_____
DENNIS J. HUBEL
United States Magistrate Judge

**Scheduling Order**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due **April 1, 2013.** If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due **April 18, 2013.** When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 12th day of March, 2013.

/s/ Dennis J. Hubel
_____
DENNIS J. HUBEL
United States Magistrate Judge